## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **THOMAS L. GLOVER** | **CIVIL DOCKET NO. 6:23-cv-00270** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **LAFAYETTE CONSOLIDATED GOVERNMENT and JOSHUA GUILLORY, In his Individual and Official Capacities** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendants Lafayette City-Parish Consolidated Government ("LCG") and former Mayor-President Joshua Guillory (collectively, the "Defendants"). [Doc. 16]. Defendants seek summary judgment as to every claim asserted by Plaintiff Thomas L. Glover (hereinafter, "Plaintiff"). After careful consideration and for the reasons that follow, the Court GRANTS Defendants' Motion and dismisses Plaintiff's claims with prejudice.

### BACKGROUND

Following a national search for a new Chief of Police for the Lafayette Police Department ("LPD"), on December 31, 2020, then Mayor-President Joshua Guillory ("Guillory") selected Thomas L. Glover, an African American male, for the position. [Docs. 1, pp. 2-3; 16-1, p. 1; 36-3, p. 4]. Like all LCG Department directors, Glover reported to both Guillory and LCG's then Chief Administrative Officer, Cydra Wingerter ("CAO"). [Doc. 16-1, pp. 1-2].

After approximately ten months of service, LCG terminated Glover on October 7, 2021, citing its loss of confidence in his leadership after Plaintiff allegedly made misrepresentations to a councilman and to the Municipal Fire and Police Civil Service Board.  [Docs. 1, pp. 2-3; 16-1, p. 2; 16-9, pp. 6-7].  In his Complaint, Plaintiff alleges he was terminated because of his race and therefore is entitled to recover under 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983").  [Doc. 1].  Glover filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 3, 2022 [Doc. 16-3], received his right to sue letter from the EEOC on November 30, 2022 [Doc. 16-4], and brought this lawsuit on February 28, 2023 [Doc. 1].

Defendants filed the instant Motion on April 6, 2024, "seeking dismissal of the above-entitled action filed by Thomas L. Glover ('Plaintiff') in its entirety, with prejudice …" because "there are no genuine issues of material fact."  After each party received an extension of time, Plaintiff filed an Opposition on May 22, 2024, to which Defendants filed their Reply.  [Docs. 20, 29].  The parties submitted additional briefing and evidence at the Court's request on June 24, 2024.  [Docs. 36, 37].  The Motion is now ripe for ruling.

<u>LAW AND DISCUSSION</u>

## I.   Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In applying

this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet its burden. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party...." *Id.*

## II.   Applicable Law

Plaintiff brings claims under Title VII, Section 1981, and Section 1983 against the Defendants. Title VII and Section 1981 prohibit racial discrimination in the context of one's employment. *Clark v. City of Alexandria*, No. 1:20-CV-01581, 2023 WL 5970196, at *2 (W.D. La. Sept. 13, 2023) (citing *Johnson v. PRIDE Indus., Inc.*, 7

F.4th 392, 399 (5th Cir. 2021) ("We consider racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981 under the same rubric of analysis.") (cleaned up); *see also Runyon v. McCrary*, 427 U.S. 160, 174, 96 S. Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S. Ct. 1716, 44 L.Ed.2d 295 (1975). Though a plaintiff may not maintain an independent cause of action under Section 1981 against local government entities or government actors sued in their official capacities, a plaintiff may utilize Section 1983 as a "procedural vehicle" to assert his Section 1981 claim. *Escamilla v. Elliott*, 816 F. App'x 919, 927 (5th Cir. 2020).

Indeed, the law is well-settled that § 1983 (civil action for deprivation of rights) provides the only federal damages remedy against local government actors for violations of § 1981. *Clark v. City of Alexandria*, No. 1:20-CV-01581, 2022 WL 18144872, at *5 (W.D. La. Dec. 9, 2022), report and recommendation adopted, No. 1:20-CV-01581, 2023 WL 122971 (W.D. La. Jan. 6, 2023) (citing *Escamilla v. Elliot*, 816 F. App'x 919, 924 (5th Cir. 2020)); *see Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001) (A plaintiff may pursue a § 1983 cause of action against persons acting under color of state law in order to assert his substantive rights under § 1981.). Thus, "Section 1983 and [T]itle VII are parallel causes of action … and the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (citations and internal quotation marks omitted); *see also Nilsen v. City of Moss Point, Miss.*, 701

F.2d 556, 559 n. 3 (5th Cir. 1983).  The Court will discuss each of Plaintiff's claims in turn.

### A. Claims Against Joshua Guillory in his Individual and Official Capacities

In their Motion, Defendants argue that Joshua Guillory should be dismissed as a defendant both in his individual and official capacities because he is not subject to liability under the theories Plaintiff posits.  Though Plaintiff does name Joshua Guillory as a defendant in both his individual and official capacities, Plaintiff fails to address Defendants' arguments in his Opposition.

#### 1. Title VII Claim

##### a) Individual Capacity

While Title VII defines the term employer to include "any agent" of an employer, 42 U.S.C. § 2000e(b), the Fifth Circuit does not interpret the statute as imposing individual liability for such a claim.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).  Congress's purpose in extending the definition of an employer to include an agent in Section 2000e(b) was to import *respondeat superior* liability into Title VII.  *Indest*, 164 F.3d at 262; *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994).  Thus, a Title VII suit against an employee is really a suit against the employing entity.

Accordingly, claims against individual employees or officers in their personal capacities should ordinarily be dismissed because Title VII only applies to employers. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) ("there is no individual liability for employees under Title VII"); *Mullet v. Touro Infirmary*, No. CV 19-11851,

2019 WL 6527895, at *2 (E.D. La. Dec. 4, 2019) ("an employer or supervisor faces [Title VII] liability solely in his official capacity").  Here, Joshua Guillory, in his personal capacity, was not serving as Plaintiff's employer.  Accordingly, summary judgment is proper as to Plaintiff's Title VII claim against Joshua Guillory in his individual capacity.

### b) Official Capacity

Plaintiff also cannot maintain his suit against Joshua Guillory in his official capacity.  A plaintiff may not "maintain an action against both a corporation and its agent in an official capacity [in a Title VII action] because effectively the corporation could be held liable twice for the same act." *Indest*, 164 F.3d at 262; *see also Smith*, 298 F.3d at 449 ("a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity.").  Accordingly, because Plaintiff named LCG as a defendant, summary judgment on Plaintiff's Title VII claim against Joshua Guillory in his official capacity is also appropriate.

### 2. § 1981 Via § 1983 Claim

### a) Individual Capacity

The Supreme Court has held that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 2723, 105 L.Ed.2d 598 (1989).  Nonetheless, § 1981 does not impose "personal liability on *elected* officials for discrimination in the terms and conditions of local government

employment contracts." *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 464 (5th Cir. 2001) (emphasis added); *see also Knox v. City of Monroe*, 551 F.Supp.2d 504, 508, n. 6 (W.D. La. 2008) (noting that it "appears ... that the Fifth Circuit draws a distinction between elected officials and unelected municipal employees").

As an elected official, Joshua Guillory therefore may not be held liable under § 1981 via § 1983, in his individual capacity. *See Davis v. Matagorda Cnty.*, Civ. Action No. 18-0188, 2019 WL 1015341, at *15 (S.D. Tex. Mar. 4, 2019), R&R adopted, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019) (citations omitted); *Hill v. Brown*, No. CV 3:21-02516, 2022 WL 3094329, at *6 (W.D. La. July 19, 2022), report and recommendation adopted, No. CV 3:21-02516, 2022 WL 3093861 (W.D. La. Aug. 3, 2022). Accordingly, summary judgment is proper as to Plaintiff's § 1983 claim against Joshua Guillory in his individual capacity.

### b) Official Capacity

Furthermore, it is well-settled that a lawsuit against a municipal official in his or her official capacity is simply another way of alleging municipal liability. *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (W.D. La. 2012), citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). When the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996); *Broussard v. Lafayette City-Parish Consolidated Government*, 45 F.Supp.3d 553, 572 (W.D. La. 2014); *Delouise v. Iberville Parish School Bd.*, 8 F.Supp.3d 789, 807 (M.D.

La. 2014).  Here, because Plaintiff has named LCG, the government entity, as a defendant in the suit, it is duplicative to maintain the same claim against Guillory in his official capacity.  Accordingly, summary judgment is proper as to Plaintiff's § 1981 via § 1983 claim against Joshua Guillory in his official capacity.

### B. *Monell* Claim Against LCG

Defendants also argue that Plaintiff's § 1983 claim should be dismissed as he cannot make out a *Monell* claim under the traditional § 1983 municipal liability analysis.  In his Opposition, Plaintiff neither addresses nor rebuts Defendants' contention.

A local government entity may be liable under § 1983 if either: (i) that entity "cause[s] a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers;" or (ii) a "constitutional deprivation [occurs] pursuant to a governmental custom, even if such custom has not received formal approval." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (describing the cause of action promulgated by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)) (internal citations omitted). A *Monell* claim is thus comprised of three elements: (i) a policymaker; (ii) an "official policy" or "governmental custom;" and (iii) a "violation of constitutional rights whose moving force is the policy or custom." *Id.* (noting that "[t]he elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis."); *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).  Importantly, a plaintiff bears the

burden of proof to show that an unconstitutional municipal policy or established custom exists in a § 1983 case.  *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 926, 99 L.Ed.2d 107 (1988)).

Further, a *Monell* claim requires a plaintiff to link a "constitutional violation" to a "policy or custom" maintained by a municipality.  *Bennett v. Serpas*, 2017 WL 2778109, at *2 (E.D. La. June 26, 2017) (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000) (a *Monell* plaintiff claiming the existence of an unconstitutional "custom" must establish "[a] persistent, widespread practice of city officials [that] ... is so common and well settled as to constitute a custom that fairly represents municipal liability."); *see also Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents.").  Indeed, "[a] municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted).

An official policy requirement can be shown by: (1) written policy statements, ordinances, or regulations; or (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.  *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations and internal quotations omitted).  Plaintiffs may establish the existence of a custom or policy either by demonstrating: (1) a pattern of unconstitutional conduct by municipal actors or

employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow,* 614 F.3d at 169.[1]

To prevail on a widespread practice or custom claim, a plaintiff must show that similar unconstitutional acts have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct. *Zarnow*, 614 F.3d at 169 (internal citations omitted). That is, a pattern requires "sufficiently numerous prior incidents," not "[i]solated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989). A pattern also requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (collecting cases). Plaintiff offers no evidence of "a pattern of similar instances in which other individuals were injured." *McClendon v. City of Columbia*, 258 F.3d 432, 442 (5th Cir. 2001), *reh'g en banc granted, opinion vacated*, 285 F.3d 1078 (5th Cir. 2002), and *on reh'g en banc*, 305 F.3d 314 n. 3 (5th Cir. 2002).

In addition, employment discrimination claims brought under §§ 1981 and 1983 "are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964." *Clark v. City of Alexandria*, No. 1:20-

---

[1]     "It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Louisiana Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 F. App'x 317, 320 (5th Cir. 2020) (citation omitted). Plaintiff does not address this "final policymaker" theory of liability under § 1983 in his Opposition. Therefore, the Court will only address the "widespread practice or custom claim" analyzed by Defendants.

CV-01581, 2022 WL 18144872, at *5 (W.D. La. Dec. 9, 2022), report and recommendation adopted, No. 1:20-CV-01581, 2023 WL 122971 (W.D. La. Jan. 6, 2023) (quoting *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999)); *see also Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).  Under that framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See id.; see also* Part IIC *infra*.

Here, Plaintiff has not shown specific acts of racial discrimination on the part of LCG, let alone a "widespread practice" sufficient to satisfy the standards imposed by *Monell* and its progeny.  *See generally infra* (dismissing Plaintiff's race discrimination claims on the basis of failure to establish a *prima facie* case of discrimination).  Because Plaintiff has failed to provide law or evidence in support of his claim, summary judgment is appropriate as to his *Monell* claim.

### C. Title VII Claim Against LCG

Title VII prohibits an employer from discriminating against its employees on the basis of the following protected classes: race, color, religion, sex, and national origin.  42 U.S.C. § 2000(e)-2(a).  To establish a claim for unlawful discrimination under Title VII, a plaintiff may present either direct[2] or circumstantial evidence. *Dailey v. Whitehorn*, 539 F. App'x 409, 411 (5th Cir. 2013).  In the absence of direct

---

[2]    "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption."  *Brown v. E. Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

evidence,[3] Title VII cases are governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012), *as revised* (June 22, 2012).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* claim of racial discrimination. *Hardison v. Skinner*, 2022 WL 2668514, at *2 (5th Cir. July 11, 2022). Once a plaintiff has met his burden of making a *prima facie* case of discrimination, the burden then shifts to the employer to show a legitimate non-discriminatory reason for its actions. *Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437, 443 (5th Cir. 2018). This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)). "If the employer produces a legitimate alternative reason, 'the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is ... a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct,' with the plaintiff's race being another 'motivating factor.'" *Odubela*, 736 F. App'x at 443 (quoting *Alvarado*, 492 F.3d at 611); *Hardison*, 2022 WL 2668514, at *2 ("To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.").

---

[3]     Plaintiff neither alleged nor submitted direct evidence to the Court of racial discrimination in response to the Defendants' Motion.

1.  ***Prima Facie* Case**

The elements of a plaintiff's *prima facie* case vary with the nature of the claim asserted.  *Compare Morris v. Town of Indep.*, 827 F.3d 396, 400–01 (5th Cir. 2016) (discriminatory termination) *with Alvarado v. Texas Rangers*, 492 F.3d 605, 610–11 (5th Cir. 2007) (failure-to-promote) and *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (Title VII retaliation).  With respect to claims of discriminatory termination, a plaintiff may make a *prima facie* showing of race discrimination by establishing that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside of his protected group or was treated less favorably than other similarly situated employees (i.e., "comparators") outside the protected group.[4]  *See Ernst v. Methodist Medical Hospital Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (citing *Story v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)); *see also Johnson v. Iberia Med. Ctr. Found.*, 2023 WL 1090167, at *9 (W.D. La. Jan. 27, 2023).

As for the first three elements of Plaintiff's case, it is undisputed that Glover is a member of a protected class, that he was qualified for the position, and that he was terminated.  The parties dispute the fourth prong of Plaintiff's *prima facie* case.  First, Defendants raise in their Motion that Plaintiff does not allege in his Charge, Complaint, or Rule 26(f) disclosure that he was replaced by a similarly qualified

---

[4]     Plaintiff does not argue in his Opposition that he was treated less favorably than other similarly situated employees.

person outside of his protected group.  However, Plaintiff, in his Opposition, does assert that he was ultimately replaced with someone outside his protected class, Monte Potier and Judith Estorge.[5]

Second, Defendants argue that Plaintiff fails to meet the fourth prong of his *prima facie* case because his immediate replacement was Wayne Griffin, an African American male, who served as interim chief and that Plaintiff made no argument nor provided evidence that Griffin's appointment was a "ruse to disguise supposed unlawful, intentional race-based discrimination."  Plaintiff counters in his Opposition that though Wayne Griffin was hired as an interim chief after Plaintiff's termination;

---

[5]      Additionally, in their Reply, Defendants re-assert that Plaintiff's failure to plead he was replaced with someone outside of his protected class, a critical fact element of his *prima facie* case, supports dismissal of his claim and a grant of summary judgment.  Defendants cite no case law for this proposition.

The *McDonnell Douglas* framework is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L.Ed.2d 1 (2002) (decided on Motion to Dismiss standard).  Further, in his Opposition, Plaintiff both argued and offered evidence regarding replacement by someone outside of his protected class by listing his successors: (1) Interim Chief Wayne Griffin, an African American male, (2) Interim Chief Monte Potier, a white male, and (3) Chief Judith Estorge, a white female.  [Doc. 20, p. 7].  The question as to whether an interim replacement counts as a "replacement" for purposes of Title VII is discussed *infra*.

Defendants also cite Fifth Circuit caselaw, *Cutrera v. Bd. of Sup'rs of La. State Univ.*,429 F.3d 108, 113 (5th Cir. 2005); *Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) for the proposition that "a claim or factual theory not raised in Complaint, but rather raised only in response to a motion for summary judgment is not properly before the Court."  However, the cited cases are distinguishable because they involve plaintiff positing a new theory of liability at the summary judgment stage, not merely supporting their burden of proof for a *prima facie* case.  In his Complaint, Plaintiff alleged one count of racial discrimination in violation of 42 U.S.C. § 2000e-2 *et seq.*, 42 U.S.C. § 1983, and 42 U.S.C. § 1981.  [Doc. 1, p. 6].  This is a sufficient basis for him to offer argument and evidence seeking to establish a *prima facie* case of discrimination.

ultimately someone outside the protected class, Judith Estorge, a white female, became permanent chief.   Alternatively, Plaintiff posits that meeting this fourth element of his *prima facie* case, replacement with someone from outside the protected class, is irrelevant due to the light standard of establishing a *prima facie* case.

The Court turns first to whether Wayne Griffin, as an Interim Police Chief, would be recognized as a replacement for the purposes of establishing the fourth element of Plaintiff's *prima facie* case.  "Though the Fifth Circuit has not expressly addressed the issue, it has recognized that it is proper to consider any replacement that is not "called, deemed or viewed" as a temporary replacement.  *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir. 2021) (a case in which the plaintiff brought suit under the Texas Commission on Human Rights Act, which the Court stated is analogous to Title VII); *See also Douglas v. St. John Baptist Par. Libr. Bd. of Control*, No. CV 21-599, 2022 WL 898746, at *18 (E.D. La. Mar. 28, 2022).

In this case, Wayne Griffin served as Chief of Police from October 7, 2021, to January 6, 2022, approximately four months.[6]  [Doc. 36-1, p. 2].  Further, Defendants provide evidence, through the sworn affidavits of those directly involved in the hiring

---

[6]      Plaintiff, in his supplemental briefing, alleges that Wayne Griffin held the position of Interim Police Chief for two weeks, citing an online news article from *The Current*.  However, news articles do not constitute competent summary judgment evidence to prove the truth of the facts they report because they are inadmissible hearsay.  *Cano v. Bexar County, Texas*, 280 F. App'x 404, 406 (5th Cir. 2008) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)); *see also James v. Texas Collin County*, 535 F.3d 365, 374 (5th Cir. 2008).  For this reason, the Court does not accept Plaintiff's proposed timeline for Griffin's employment as Police Chief.  Instead, the Court will adopt Defendants' submitted employment timeline, attested to by Rick Zeno, who was the Human Resources Manager for LCG during the pertinent time.

process,[7] which indicate that LCG's intent when hiring Griffin was that he would serve as LPD's long-term, permanent police chief.

The Court finds this assertion consistent with the facts. First, during the national search for a new police chief in 2020, the top three candidates selected by LCG[8] were ranked as follows: Thomas Glover in first place, Wayne Griffin in second place, and Paul Trouard in third place. [*See* Docs. 36-2, p. 2; 36-3, p. 1]. As stated in the Declaration of Cydra Wingerter, Griffin's second-place position combined with his work history reasonably made him the logical and most qualified replacement candidate once Glover was terminated. [*See* Doc. 36-3, p. 2 (Wingerter stating, "I personally considered Wayne Griffin to be very well qualified for the position based on the prior evaluation, review and vetting process conducted in 2020. It was my personal understanding that Wayne Griffin had been a long-term Officer in the Lafayette Police Department for approximately nineteen (19) years and that he was very well respected and well liked in the Police Department and in the community.")].

Second, the Declarations reveal that no national or local search for a chief of police occurred between the time Griffin was appointed Interim Police Chief until he was terminated. [Doc. 36-1, p. 2 (Rick Zeno stating, "I was never told by [Joshua

---

[7]    These key players are Joshua Guillory, Mayor-President, Cydra Wingerter, Chief Administrative Officer of LCG, and Rick Zeno, Human Resources Manager for LCG. [*See* Docs. 36-1; 36-2; 36-3].

[8]    Cydra Wingerter described the process behind the search as including "reviewing resumes and information submitted by candidates, conducting interviews, discussing with others the candidates and their qualifications, confirming that candidates passed the required Civil Service test, engaging in discussions with others involved in the process, including a committee made up of members of the community, and evaluating and ranking the candidates." [Doc. 36-3, p. 1].

Guillory] or anyone else in October 2021 that a search for a new Chief of Police would be conducted."); Doc. 36-2, p. 2 ( Joshua Guillory stating, "I personally believed that when Mr. Griffin was appointed as Chief of Police, there was no need for LCG to conduct a new search and that LCG had a very well qualified candidate in Mr. Griffin. Between the time that Mr. Griffin was named Chief of Police until the time that he was removed, LCG was not conducting a search for the Chief of Police position."); Doc. 36-3, p. 4 (Cydra Wingerter stating, "I am personally aware that between the time that Mr. Griffin was appointed as Chief of Police to the time that he was removed, a search was not being conducted for a new Chief of Police. This includes both a local search and a national search. Additionally, the position was not opened at that time for individuals, both internal and external, to apply for the Chief of Police position.")].

Third, Declarants expressed their explicit intent that in appointing Griffin as Interim Police Chief, he would eventually be confirmed as permanent Police Chief. [Doc. 36-2, p. 2 (Joshua Guillory stating, "It was my intent that Mr. Griffin would be given a fair opportunity to serve as Chief of Police long term, and it was my intent for him to succeed in the position. Although he may have originally been named as an interim chief, it was my intention that Mr. Griffin would be confirmed had he demonstrated success in the Chief of Police position in his interim period."); Doc. 36-3, p. 2 (Cydra Wingerter stating, "Through my communications with Mr. Guillory, the decision was made to appoint Mr. Griffin as the Chief of Police and to engage the process necessary to make him the permanent Chief of Police, the same as was done with Mr. Glover."); Doc. 36-3, pp. 2-3 (Wingerter stating that Griffin "would be confirmed had he demonstrated success in the Chief of Police position" and "Had Mr.

Griffin not been the subject of a complaint of sexual harassment by a female Officer after he was appointed Chief of Police and after an Internal Affairs Investigation was conducted, he would have remained in the position of Chief of Police.")].

Given these facts, it would not appear that anyone involved in the hiring decision or more broadly, at LCG, viewed, called, or deemed Griffin to be merely a temporary replacement for the Chief of Police position. Rather, he was hired and was undergoing the standard procedural steps and safeguards before he could be confirmed as permanent Police Chief. Thus, the Court finds it is proper to consider Griffin as Plaintiff's replacement for the purposes of establishing a *prima facie* case. Because Plaintiff's replacement was someone from the same protected class as Plaintiff, Glover fails to meet the traditional fourth element of his *prima facie* case. The Court will next consider whether Plaintiff can meet his burden to show a *prima facie* case under other accepted standards.

As Plaintiff points out, the Fifth Circuit has acknowledged precedent for the establishment of a *prima facie* case without the traditional fourth element being completely satisfied. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 n. 7 (5th Cir. 1997), *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir. 1985), *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996). Regardless, the Fifth Circuit has noted that the fourth element is still "certainly material to the question of discriminatory intent." *Id.* (citing *Nieto*, 108 F.3d at 624). Essentially, the Court may examine the fourth prong with "an expansive understanding" and determine if Plaintiff's race was a motivating factor in his employer's decision to terminate him. *Id.* The burden of

establishing a *prima facie* case is not "onerous" … a plaintiff need only "prove by a preponderance the evidence that he was discharged from the position from which he was qualified 'under circumstances which give rise to an inference of unlawful discrimination.'" *Jones v. W. Geophysical Co. of Am.*, 669 F.2d 280, 284 (5th Cir. 1982) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).   Even with this more flexible standard, the Court finds that Plaintiff failed to prove his *prima facie* case.

As an initial matter, Plaintiff's replacement by someone within his protected class cuts against the inference of discriminatory animus in his termination. Additionally, as Defendants argue, the "same actor inference" offers further support for summary judgment.  The same actor inference creates a rebuttable presumption that the adverse action imposed on a plaintiff was not the result of unlawful discrimination when the same person both hires and fires the plaintiff.  *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), abrogated in part on other grounds, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000); *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009); *Trevino v. City of Fort Worth*, No. 4:12-CV-717-A, 2013 WL 4516643 at *7 (N.D. Tex. Aug. 23, 2013).  "While evidence of [same actor] circumstances is relevant in determining whether discrimination occurred," the Fifth Circuit has "decline[d] to establish a rule that no inference of discrimination could arise under such circumstances."  *Haun v. Ideal Indust., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996).  Thus, the application of the inference is neither mandatory nor irrebuttable.

In the instant case, it is undisputed that Joshua Guillory, with the guidance and advice of Cydra Wingerter, both hired and fired Plaintiff. Because of this, the Court agrees with Defendants that the same actor inference applies. Although the inference is not irrebuttable, Plaintiff entirely fails to address the same actor inference in his Opposition and fails to present summary judgment evidence contradicting the fact that Guillory made the decision to both hire and fire him. Thus, this cuts against any inference of discrimination in this case.

To otherwise demonstrate discriminatory animus, Plaintiff submits the following evidence. First, Plaintiff states that the workplace demographics of the Lafayette Police Department are comprised of about 78% white officers and 22% black officers and cites to his own sworn declaration in support of this statistic. [Doc. 20-8, p. 2]. Second, Plaintiff puts forth evidence via his own sworn declaration that during his tenure, he was "referred to by certain factions as 'woke,' 'Black Lives Matter Chief,' 'Militant,' 'Black activist,' etc." [Doc. 20-8, p. 3].

Discriminatory remarks may be considered "even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir.2000)). Here, however, Plaintiff provides no evidence of who comprised these alleged "factions" or whether they were involved in or influenced the termination decision. *See Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir. 2000) (internal citations omitted) ("[T]he fact that someone who is not involved in the employment decision of which the plaintiff

complains expressed discriminatory feelings is not evidence that the decision had a discriminatory motivation … It is different when … it may be possible to infer that the decision makers were influenced by [the discriminatory] feelings in making their decision …").  Without knowledge of the identity of the speakers of these "stray remarks," the Court has no means to determine whether these remarks influenced or impacted the decisionmaker.

Ultimately, Plaintiff's statement, without more, constitutes mere conjecture and speculation.  Speculation and unsubstantiated assertions do not adequately substitute for specific facts to show a genuine dispute of material fact exists.  *Giles v. City of Dallas*, 539 F. App'x 537, 542 (5th Cir. 2013) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).  Further, even if these remarks constituted evidence of possible animus, they are insufficient, alone, to support an inference of discriminatory intent.

In seeking to establish a *prima facie* case of discrimination, Plaintiff also contests Defendants' reason for his termination, which was a purported loss of confidence in Glover after he made an alleged misrepresentation.  Significantly, "anti-discrimination laws do not require an employer to make proper decisions, only [non-discriminatory] ones," and so even if reason was a misunderstanding or mistake, the Court's job is not to second guess the business decisions of an employer.  *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).  In one of his efforts to combat Defendants' purported "loss of confidence" reason for termination,[9]

---

[9]     The Court similarly gives little credence to Plaintiff's argument that Defendants gave shifting reasons for Glover's termination.  Plaintiff alleges that "LCG's reasons for the

Plaintiff submits text messages between Guillory, Wingerter, and himself, emphasizing texts with positive feedback that he received.  However, Plaintiff glosses over text messages in which aspects of his team and leadership are criticized, specifically regarding crime statistics.  [*See* Doc. 20-6].  All considered, these text messages are not enough to raise an inference of a discriminatory motive behind Plaintiff's termination.[10]

Ultimately, LCG's hiring of a replacement within Plaintiff's protected class, the same actor inference, and Plaintiff's inability to provide the Court with other circumstantial evidence of discriminatory intent, doom his claims.[11]  Therefore, even when analyzed under an amorphous standard, the Court finds that Plaintiff has

---

termination have vacillated and evolved from no reason at all," to a loss of confidence, to a failure to perform a certain type of investigation. [Doc. 20, p. 12].  For instance, Plaintiff cites to the Personnel Action Form and Separation Notice in the record to show that he was given "no reason" for his termination. [*See* Docs. 20-3, 20-4].  However, as explained by Defendants, probationary or "working test employees were not entitled to the protection of permanent civil service employees" and thus, LCG was not required to lay out its case for termination. [*See* Docs. 29-1; 29, p. 12].  Further, LCG's Pre-Hearing Memorandum states that Plaintiff was apprised of his reason for termination, a loss of confidence in his ability to serve as Police Chief by Guillory and Wingerter, and it reiterates LCG's reason for his termination.  [*See* Doc. 29-1, pp. 12-20].  This reason is also consistent with the one given in Defendants' Response to Plaintiff's EEOC Charge.  [*See* Doc. 29-1, pp. 1-11].

[10]    Further, as Defendants point out, the positive texts tend to show that Guillory wanted Glover to succeed rather than serving as evidence of a discriminatory animus.

[11]    The Court emphasizes that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" on a motion for summary judgment. *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137 (5th Cir. 1996) (citing *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc)).  Much of the evidence Plaintiff provides is speculative at best and fails to create a genuine dispute of material fact relevant to his *prima facie* case.

failed to prove his *prima facie* case of discrimination.[12]  Accordingly, the Court finds summary judgment is appropriate as to Plaintiff's Title VII claim.

CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' MOTION FOR SUMMARY JUDGMENT [Doc. 16] is GRANTED.

IT IS FURTHER ORDERED that all of Plaintiff's claims are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 22nd day of July 2024.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

[12]     Though this Court has already disposed of Plaintiff's Section 1981 claim asserted through Section 1983, this claim is also properly subject to dismissal based on Plaintiff's failure to meet his burden to show a *prima facie* case.  *See Clark v. City of Alexandria*, No. 1:20-CV-01581, 2022 WL 18144872, at *5 (W.D. La. Dec. 9, 2022), report and recommendation adopted, No. 1:20-CV-01581, 2023 WL 122971 (W.D. La. Jan. 6, 2023) (quoting *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999)); *see also Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).